May it please the Court. Good morning, Your Honors. Wait just a second here. Your opposing counsel is getting seated. Good morning. My name is Paul Marks on behalf of Appellant Ico Farms. And if the Court please, I'd like to reserve any time I have remaining after my first round with you for rebuttal. Your Honors, in a reported opinion that made its way into the briefing by the appellees, the Ninth Circuit Court of Appeal described the burden that a defendant needs to meet for inconvenient forum analysis as a, quote, almost impossible burden, close quote, quote, to deny a United States citizen of its right to try a case in a federal district court here in the United States. And that's the Mizukami case, which is at 556 F. 2nd at page 977. And there are other cases that were briefed, of course, which indicated on both sides that the defendant meets a very heavy burden. And if I may use a baseball analogy, what that means is that a tie, which goes to the runner in baseball, goes to the plaintiff in these types of analyses. And I would... What do we do about the fact that the court determined that virtually all of the conduct in this case occurred outside of California? That the witnesses were located elsewhere, the documents? Your client wasn't even... didn't have a physical presence in the state until after the lawsuit was filed, based on my reading of the record. I think your reading of the record is accurate, but if I may say... Don't we look at the state of residency at the time the complaint is filed? In other words, we basically discourage people from doing what you're urging us to do, which is to say, well, if you open a business in San Juan or an office in San Juan Capistrano after the lawsuit is filed, that's enough to show that you're doing business here. No, I think you do discourage that, but you also encourage U.S. plaintiffs to have their forum in the United States. But the question is where in the United States. It does not appear to be the Central District of California. It might be one of the districts in Texas. It might be one of the districts in Florida. But I'm having a hard time seeing where the district court erred in deciding it didn't belong in the Central District of California. Well, I think in that situation, Your Honor, what we do is we go to the, what I think are very similar facts that are in the Boston Telecom case. There you had a New Hampshire investor who alleged that he was defrauded by a group of Slovakian residents, and he filed suit in the Northern District of California, and the Northern District judge found that, after one round in the Court of Appeals, found on remand on the district, on the inconvenient forum analysis, that the Ninth Circuit found that that court had not sufficiently given weight to the fact that the plaintiff was a United States citizen. But the court also said that the defendant's argument would have been stronger, sorry, that the plaintiff's argument would have been stronger if they'd been a resident of California, which they weren't. And you've got the exact same situation, right? Which, I mean, there's some sort of scale here, and it seems like you're asking for total deference, but doesn't that very case show that you don't get total deference? I'm not suggesting total deference to what? I'm sorry, Your Honor. Well, to your choice of forum. So you're saying we chose California, we should get to have California. You said it's virtually impossible, or however you started your argument. But that case, so the very case you're talking about, Boston Telecom says you don't have as strong a case if you're not in California. But look at what the Court of Appeals did in Boston Telecom. It remanded the matter to the trial court to assess the inconvenient forum factors based on the fact that the plaintiff there was a U.S. citizen and not simply a, in that case, a New Hampshire citizen, where the case was in the courts in California. So our court there said the district court should have given some deference, but not as much as if they'd been a California resident. But here, you don't have any factors favoring California, as far as I can tell, do you? Can you tell us what shows us that California is the convenient forum for this case? Well, I think Judge Tallman hit the nail on the head when he spoke about the fact that before this case was filed, we were in the process of setting up a California outpost, and we have now done so. So is that in the record? The fact that we have done so is not in the record per se, which is one of the reasons why I'm pushing very hard here for remand. And I'm not suggesting— And do you have any case that says that we consider actions taken after the filing of the complaint to figure out the convenience? I don't, Your Honor, but I think that there was an indication in the papers that were filed with the district court that we were in the process of doing that. So there was that connection to California. You conceded in response to my earlier question that we have to look at the state of the facts at the time that the complaint was filed and that, as a matter of policy, we don't want to encourage what you're urging us to do, which is to encourage defendants to improve their factual standing for a forum of nonconvenience. Your Honor, there are competing policies, and one of the facts that is absolutely crystal clear in the record is, whereas the plaintiff may not have had a citizenship or a residency in California, we know, based on the evidence submitted to the district court, that the defendant, Mr. Rodriguez, took multiple trips to California on behalf of the entity that he established, that's OPF, to compete with my client, and he attended trade shows in California. So that might give you personal jurisdiction, but he's not a resident of California, right? I mean, doesn't the forum of nonconvenience analysis look primarily at whether the parties are residents? Well, the forum of nonconvenience factor looks at two specific issues, and the one that we are basing our appeal on are the public and private interest factors. So residence is certainly one of those, but it's not exclusive. And so what other factors on any of those lists of public and private factors favor California? Your Honor, my general argument is that the district court erred by finding, for essentially all of the factors, that there was a heavy showing on behalf of the defendants on each of those factors justifying a Mexican forum as opposed to a California forum. Now, in direct response to your question, what I'd like to focus on are three of the factors, and the first is one we've talked about a little bit, and that's the U.S. versus California citizenship. And I've talked about the Boston Telecom case. So Boston Telecom says that some deference, at least, should be given to the U.S. party's choice of forum. But does it say that we look then at convenience by looking at the country as a whole? Do you have any case that does what you're saying, which is like look at the convenience of the whole country compared to the actual forum? Well, again, I think that beyond Boston Telecom, I don't, Your Honor, but I think that that case, which is strikingly similar on some of the facts, is a case that I would urge the court, compel this court to send the case back to the district court. Counsel, can I direct you to excerpt of Record 46, which is page 13 of the district court's order? I'm looking specifically at line 18 where she says it doesn't even matter under the Ninth Circuit case. The case two weeks ago says you are a U.S. citizen. You get the strong presumption. I mean, isn't the court recognizing what we said in Boston Telecom? I think that the court is recognizing it but then not acting upon it. So do we review that determination under an abuse of discretion standard that the court didn't properly weigh it heavily enough in the analysis? I think you do, Your Honor. And how do I conclude that she abused her discretion in so doing? The answer to that question, Your Honor, is that the court should look at the way that the district court analyzed each of the private and public interest factors and determine if there was even an exercise of discretion. But all of the factors favored a forum outside of California. So we know the district court said you get the strong presumption, and then the district court looked at all the factors and concluded that none of them favor California. So where's the abuse of discretion? Your Honor, I think the abuse of discretion lies in the fact that, you know, to me the three factors which the court did not properly exercise its discretion that are most salient are the one that we talked about, which is the United States versus California citizenship. I believe that under Boston Telecom. You keep going back to that, but you're not helping us with your answer in trying to figure out how the district court went astray. I mean, we have a series of cases starting with the in-bank decision in the United States versus Hinkson where we talk about what the abuse of discretion standard means. And it essentially says that we have to conclude that the district court's inferences drawn from the record are illogical, implausible, or not drawn from facts in the record. And yet both the oral transcript and then the later written ruling, in my judgment, seems that she carefully went through each factor and explained why she came out the way that she did. So it seems to me you have to convince us that that determination was implausible, not supported by the facts in the record, or illogical before we can declare that she abused her discretion. I understand, and I think that, for example, so I pointed out that there were three main areas. I won't say the first one because we've talked about it a lot. The second one is the issue of the witnesses, and I think that there is both implausibility, illogic, and a lack of showing in the record when it comes to the issue of the witnesses. She found, and I think the record bears this out, that this whole case is about establishing a Mexican partnership in Mexico and that the bulk of the witnesses to that contract formation or perhaps to the breach of that contract, if it was in fact a valid and enforceable contract, are all located in Mexico. She did find that, and that was error. And the reason it was error is because the only record evidence with respect to those witnesses is the statement by the appellees that there were 12 people who I don't think any of them were named in Mexico who can provide evidence relating to this, whereas we presented a number of witnesses, Mr. Backer, Mr. Chang, West Coast Distributing, all in the United States. All in Texas, though, right? Yeah, not in California. Not in California. That is true. But what happened here in the United States is the most important thing that happened, and what happened here is- But not in the Central District of California. I mean, I guess where I'm having a hard time following your argument is you want us to draw a very expansive reading that once a person is a United States citizen, then they are empowered to file lawsuits in any federal district court in the country. And I just don't read the case law that way. I mean, you've got to establish some connection to the district in which you bring the lawsuit. You'd have a much stronger case if we were sitting in the 11th Circuit and you'd file the action in the Southern District of Florida. What I'm suggesting, Your Honor, is that whereas the district court viewed this as a Mexican dispute, if you look at the purpose behind the contract that we entered into, which was to develop jointly with these Mexican citizens- You were going to distribute the produce in the United States- Throughout the United States. Including California. Including California. Right. So could you have sued in Alaska? I believe we could have sued any place that we served the defendants where we were doing business. I don't know if we're doing business- Suppose the trade conference had been in Anchorage. Would your argument have been the same when Mr. Rodriguez got served? Because I understand he was attending a trade conference in Anaheim when the process servers found him. That's correct, Your Honor. I don't know the answer to that question because I don't know if we sell into Alaska. And I don't know if we were- You pay a few oranges, go to Alaska, and he once went there and they found him. Sure. If we had evidence of selling into Alaska, if we had a prospective and in-the-works office being opened up in California, which has now been opened up, then I would say, and if Mr. Rodriguez were served there, then I would say the answer to the question is yes. Precisely because- But are you confusing jurisdiction with forum nonconvenience? I mean, the doctrine is not a refutation of the fact that no United States District Court has jurisdiction. It is, from a case management standpoint, a prudent doctrine as to which United States District Court is the most appropriate forum, and that this particular forum, the Central District of California, is not convenient because of all the factors that the District Court identified. I'm running out of time. I'll give you some time on that. I would say it's precisely convenient because the gentleman who is represented by Appellee's Counsel came to the Central District of California on multiple occasions on behalf of his company, OPF, precisely to breach the contract that he entered into down in Mexico. Sure, things happened in Mexico, but the whole purpose of the contract and the purpose of the lawsuit was for us to protect our clients, our customers, and our markets in the United States, and they have done what they did by coming to California, being served in California at a trade show, and that to me is sufficient under the impossibly heavy burden of the defense to keep the court here in the Central District of California. Okay. I'll give you a couple minutes on rebuttal. I appreciate that, Your Honor.  Good morning, Your Honors. Tim Bechet and my colleague, Jerry Hawkshurst, on behalf of Appellee. May it please the Court. The District Court did not abuse its discretion when it held that this case brought in California by a Florida corporation against two Mexican residents alleging breaches of an agreement to establish a Mexican farming operation would be more conveniently litigated in Mexico. In a well-reasoned 29-page order, Judge Stanton afforded IKO the proper level of deference, carefully weighed the evidence presented by the parties, analyzed all 12 private and public interest factors. Counsel, can you tell me what the status is of the Mexican litigation? Your Honor, we just got an update from our client that all the documents had worked their way through the processes in Mexico, and in August were sent to the Mexican consulate in Florida, and they were told that within three months it should be served, and they're expecting to hear back regarding that service shortly. So none of the defendants have been served yet in the United States? That's my understanding, Your Honor. Why is the comparison one of the whole country of Mexico versus a part of the United States, California? Your Honor, respectfully, I don't believe that that's what the comparison was. Mr. Rodriguez indicated in his declaration that he is a resident of Guanajuato, Mexico, and we provided a declaration of misrepentant support of our motion to dismiss, who was himself an attorney in Guanajuato, Mexico, and provided details about the courts in Guanajuato, Mexico, how the laws would be applied there. So it was a fair comparison between the central district and the specific forum in Mexico where the case would be proceeding. Can we tell that from the district court opinion, or does the district court just talk about Mexico? Your Honor, I believe the district court's opinion might just talk about Mexico, but the record does have evidence from Mr. Pena that pertains specifically to the district that the Mexican action is pending in. And then additionally, as to the witnesses in Mexico, Mr. Rodriguez identified employees of OPF who would be potentially relevant witnesses, and OPF, like Mr. Rodriguez, is in Guanajuato, Mexico, so those employees, too, are likely in that forum or conveniently located near that forum. To address some of the things you asked Palin about, Mr. Rodriguez agrees that it is a heavy burden to secure dismissal on the basis of forum non-convenient ends, but he contends that he adequately satisfied that burden. There was extensive discussion about the Boston Telecom case, which I think, as Your Honor has pointed out, supports an intermediate level of deference for a U.S. resident suing outside of its home forum. I'd like to point out two distinctions between Boston Telecom and this case. First, the court in Boston Telecom identified connections between the plaintiff's case and California. The plaintiff, though they weren't a California resident, alleged that they had received certain misrepresentations in California, that certain documents pertaining to their agreement and their claims were in California. Palin here has not done that. As Your Honor has recognized earlier, there's no evidence of any misconduct taking place in California. Well, that's not quite right. I mean, he did address the fact that the conduct by Mr. Rodriguez, which I assume is in breach of the contract, included soliciting customers here in California for distribution of the produce that should have been funneled through AECO Farms, did he not? Your Honor, I don't believe that's what the record evidence shows. Well, isn't that the relevance of, I can't remember the names of all the companies, just Huron and West Coast Distributing? Those are the companies that AECO contends Mr. Rodriguez diverted produce to that should have gone to AECO. Right, which is conduct that I assume counsel meant would be conduct in breach of his contractual agreement from the contract signed in Mexico. Correct, but there's no evidence that that conduct took place in California. Was it in Texas? I mean, Your Honor, we don't contend that misconduct took place anywhere, but the record shows that. I see what you're saying, because he was dealing with the, I don't know what they're called, sales agents or representatives of those companies located outside of California, even though the produce itself might actually be distributed here in California. Correct, Your Honor. Even if produce ended up in California, under the contract and AECO's interpretation, should have gone to AECO, the misconduct that AECO alleges is the exporting of that produce from Mexico to someone other than AECO. Once Mr. Rodriguez exports produce in violation of the contract, that's the breach. Whether that produce then ends up in California, ends up in Alaska, ends up in West Virginia, the breach occurs in Mexico. So where the produce ultimately ends up is not material to deciding which forms have a connection to this case. How do you respond to their argument that they could have sued in Florida and California is actually more convenient than Florida? Doesn't that create a bit of a logic puzzle with this case? Your Honor, I think on Mr. Rodriguez's motion, the court was looking simply at, should the case be in the Central District of California or Guanajuato, Mexico? And on that binary decision, the court said Mexico is a more convenient forum. If AECO had brought the case in Florida, it would be an entirely different analysis between where the witnesses are, where the evidence is, where the misconduct took place. So I don't think just the fact that they might have brought the suit in Florida, which I think potentially presented jurisdictional issues for them, as you saw in some of the other lawsuits they tried to bring in Florida, just that the case might have been brought in Florida does not change the fact that the court found Mexico to be more convenient than Central District of California. A case that I think is more instructive than the Boston Telecom case is the Gemini Capital v. Yap Fishing Corporation case, another Ninth Circuit case, one that Boston Telecom cites favorably. In that case, the plaintiff had entered into a fishing venture with companies in the Federated States of Micronesia. And when the fishing venture fell apart, the plaintiff sued in Hawaii. So again, you have a situation where it is a U.S. citizen suing in a forum that's not their home forum. Now, in affirming district court dismissal in that case, the court of appeals recognized that the district court properly afforded less deference than had the plaintiff been suing in its home forum and weighed many of the factors the same way that Judge Stanton weighed the factors below. Specifically there, the judge found that the witnesses in the state of Yap, which was the forum that defendants resided in that defendants were saying was more convenient, were more significant, more material to the case, than the U.S. witnesses that the plaintiff had identified in Washington, D.C. So again, plaintiffs identifying witnesses outside of the forum but in the United States. District court is saying that factor weighs in favor of the foreign forum. And similarly in that case, the district court also weighed in favor of dismissal the fact that there had been a pending action between the parties prior to the plaintiff bringing their suit in the federal district court. Another case that shows that the district court did not abuse its discretion in weighing these factors is La Jolla v. Starwood Hotels and Resorts case. That case is slightly different because there the plaintiff was a U.S. resident suing in their home forum, but still the court found the fact that the misconduct took place in Mexico, that the relevant witnesses were in Mexico, and that the laws in Mexico were likely to apply, all weighed in favor of dismissal even when the plaintiff was afforded more deference because they had sued in their home forum. Based on that case and based on the Payne v. United Telecoms case, a D.C. circuit case, this court could affirm even if it found that IKO was entitled to greater deference than what the district court showed it. Unless your honors have any additional questions, I'll just submit by saying that the district court analyzed all the factors, reasonably balanced those factors, and therefore its decision is entitled to substantial deference and should be affirmed. All right. Thank you very much. Your honors, I just have two points unless the court has any questions of me. As to the Gemini v. Yap fishing case that was just referred to, I can tell the court I've not been to Yap, but I've been to Guam, and I know that to get to Guam you need to get to Yap you need to go through Guam, and from Hawaii to Guam is a 10-hour flight, and then from Guam to Yap is another multiple-hour flight. So we're talking about places that for practical purposes are much further away than a quick hop. It's on the other side of the world. Not literally, but practically speaking. And still within the Ninth Circuit, which never ceases to amaze me. May there be oral argument there someday. We do it once in a while, but Judge Friedland and I, and I'm quite sure Judge Faber, have never been blessed with that assignment. Good scuba diving. Yes. And my second point, Your Honors, is that, again, getting back to this issue of the convenience of witnesses and whether the trial court adequately performed its exercise of discretion, the only record evidence that I see as to the witnesses that the appellees would bring forth in this matter appears in Excerpts of Record 326, and unless I'm mistaken, this is it. And it's so short, I'm going to read it into the record if the court allows me. It's Paragraph 11. All of OPF's officers and employees reside in Mexico. To require these individuals to travel to the United States to serve as witnesses for this lawsuit will impose great difficulties and hardships on OPF's business and operations. And in the briefing, what the appellees did was to move away from the evidence and argue that the record evidence of witnesses that justified the trial court's order was satisfied by the allegations of the complaint. I briefed that issue. I don't think that it is persuasive. The witnesses there are witnesses in the United States who have traveled to California. Unless the court has any further questions, I would submit. Okay. Thank you both very much. The case just argued is submitted. Thank you, Your Honor. And we will be adjourned until tomorrow morning.
judges: Tallman, Friedland, Faber